PRATT, HURST & CO., Limited, v. TAILER et al.

(Supreme Court, Appellate Division, First Department. December 3, 1909.)

1. LANDLORD AND TENANT (§ 166*)—INJURY TO TENANT'S GOODS—LIABILITY OF LANDLORD—NOTICE OF DEFECTS IN BUILDING.

Where a landlord, in a lease stipulating that he should not be liable for leakage of the roof until after notice thereof, permitted a third person to use the roof for a specified purpose, and the third person strung wires and placed appliances on the roof, and thereafter the roof leaked and damaged the tenant's goods, the latter, to recover without proof of no-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tice to the landlord, must show that the roof was not suited to the use to which the third person put it, and that his use was likely to and did so injure the roof that water leaked through.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 660; Dec. Dig. § 166.*]

**2. LANDLORD AND TENANT (§ 166*)—INJURY TO TENANT'S GOODS—LIABILITY OF LANDLORD—NOTICE OF DEFECTS IN BUILDING.**

Where the tenant knew, at the time of the execution of the lease, that the third person was in possession of the roof, the tenant was bound by the stipulation as to notice, and that the third person had agreed to keep the roof in repair did not affect the landlord's liability.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 660; Dec. Dig. § 166.*]

**3. LANDLORD AND TENANT (§ 166*)—INJURY TO TENANT'S GOODS—LIABILITY OF LANDLORD—NOTICE OF DEFECTS IN BUILDING.**

The landlord was not liable simply because the roof was in bad condition, and such condition was ascertainable by the exercise of ordinary care, unless there was such a state of facts as to dispense with notice.

[Ed. Note.—For other cases, see Landlord and Tenant, Dec. Dig. § 166.*]

**4. LANDLORD AND TENANT (§ 169*)—INJURY TO TENANT'S GOODS—LIABILITY OF LANDLORD—INSTRUCTIONS.**

Where a lease stipulated that the landlord should not be liable for leakage of the roof until after written notice of the condition of the roof, and the tenant sued the landlord for injury to his goods by leakage from the roof, but failed to show notice, as required, an instruction that "the law imposes on the owner of a building of this character the duty of keeping in order the roof" was erroneous.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 667; Dec. Dig. § 169.*]

**5. TRIAL (§ 296*)—INSTRUCTIONS—ERROR IN INSTRUCTIONS CURED BY OTHER INSTRUCTIONS.**

Where, in an action against a landlord for damages caused by leakage of the roof, the tenant, under the lease, was required to show that the roof was not suited to the use to which a third person had put it pursuant to an agreement with the landlord, and that such use so injured the roof that water leaked through, the error in an instruction that if the jury found that the roof was in bad condition, and the same could have been discovered by the landlord exercising ordinary care, they should find for plaintiff, etc., was not cured by another instruction that if the leakage was due to defects in the roof caused by ordinary wear, or by any other cause than the acts of the third person or the acts of the landlord, the verdict should be for the landlord.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 709; Dec. Dig. § 296.*]

**6. EVIDENCE (§ 580*)—EVIDENCE AT FORMER TRIAL—DEATH OF WITNESS—IDENTITY OF PARTIES.**

Where the subject-matter of two actions was the same, and the same plaintiff prosecuted both actions, the fact that in the second action the defendants in the first were sued in both their individual and representative capacities did not render inadmissible, under Code Civ. Proc. § 830, the testimony of a witness at the first trial who had died before the second trial.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2413; Dec. Dig. § 580.*]

**7. TRIAL (§ 105*)—TESTIMONY AT FORMER TRIAL—OBJECTIONS.**

Under Code Civ. Proc. § 830, providing that the testimony of a deceased witness is subject to any legal objection, etc., objections to inadmissible portions of the testimony of a deceased witness offered on a subsequent

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

trial may be made, though no objection was made to such testimony when given, or the objection made was overruled and the testimony received.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 262; Dec. Dig. § 105.*]

Appeal from Trial Term, New York County.

Action by Pratt, Hurst & Co., Limited, against Edward N. Tailer, individually and as sole surviving executor, etc., and another, individually and as substituted trustee, etc. From a judgment for plaintiff and and from an order denying a new trial, defendants appeal. Reversed, and new trial ordered.

See 53 Misc. Rep. 52, 103 N. Y. Supp. 1094.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGH-LIN, McLAUGHLIN, and CLARKE, JJ.

George R. Coughlan, for appellants.
Arthur L. Marvin, for respondent.

McLAUGHLIN, J.   The plaintiff leased from the defendants a portion of a building in the city of New York. The lease contained a provision that the defendants should keep the roof in repair, but should not be liable "for any damage caused by leakage of the same, unless they shall neglect to make the necessary repairs within a reasonable time after receiving a written notice of such leakage." During the term of the lease a heavy rainstorm occurred, and water leaked through the roof and damaged plaintiff's goods. This action was thereafter brought to recover the damages alleged to have been sustained. The jury rendered a verdict in favor of the plaintiff for the full amount claimed, with interest, and, from the judgment entered thereon and an order denying a motion for a new trial, defendants appeal.

At the trial it appeared that, for some time immediately prior to the time plaintiff's goods were injured, the defendants had permitted the Holmes Electric Protective Company to use the roof of the building for a testing station, and it had strung wires and placed appliances thereon. The company had agreed with the defendants to keep the roof in good repair, and had in fact made repairs a short time before the leakage occurred. The roof sloped toward one of the rear corners, where there was a basin about three feet square and a foot deep, from which water from the roof was carried away by a leader. The mouth of this leader was protected by a wire screen or "rose," and after the storm referred to it was found this screen had become choked with pieces of wire and paper, so that the water could not run off, and by reason of that fact had backed up over the roof for five or ten feet around the basin, and the leakage had been caused in this way.

It is not claimed that a notice called for by the lease had ever been served upon the defendants, and it is contended by them that, in the absence of the service of such notice, a recovery ought not to be permitted. This question was presented to and determined by the Court of Appeals on a demurrer (186 N. Y. 417, 79 N. E. 328); the court holding, as appears from the headnote, that the provision in the lease requiring a written notice did not exempt defendants from liability

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

for damages caused by leakage, although no notice was given, where the leakage was caused by their having permitted a third party to use the roof for purposes to which it was not adapted, thereby rendering it leaky and unsafe, to the knowledge of the lessors. At the trial no attempt was made to show that the defendants had actual knowledge of any defects in the roof; the plaintiff's contention being that the Court of Appeals had determined all that was necessary to show was that the defendants had permitted the Holmes Company to use the roof. I do not understand from the opinion that that court laid down any such rule. It seems to me it was necessary for the plaintiff, in order to recover, to prove that the roof was not suited to the use to which the Holmes Company proposed to put it, and the use by that company was likely to and did so injure the roof that water leaked through. If I am correct in this conclusion, then the plaintiff failed to prove a cause of action, because there was no proof offered to the effect that the authorized use of the roof by the Holmes Company was likely to or did cause the leakage, unless it can be inferred from the fact that there were workmen upon the roof, which I do not think it can. It did not appear how many of the Holmes Company's employés used the roof, or what effect such use had upon the roof, and, in the absence of such proof, I do not see how the defendants can be said to be liable simply because they permitted persons to go upon the roof.

Not only this, but it would seem that the Holmes Company was in possession of the roof when the lease was made, and if this was so, and the plaintiff knew it, then, having expressly agreed that the defendants should not be liable for leakage until after written notice, it was, in that event, bound by this provision. The fact that the Holmes Company had agreed to keep the roof in repair is of no importance, because the defendants were bound to do that so far as the tenant was concerned, and they could not delegate their duty in this respect. O'Rourke v. Feist, 42 App. Div. 136, 59 N. Y. Supp. 157; Sciolaro v. Asch, 129 App. Div. 86, 113 N. Y. Supp. 446. In this connection it seems to me the court erred in charging the jury that the plaintiff was entitled to recover if they found that this roof was in bad condition, and that fact was known to these defendants, or by the exercise of ordinary care should have been readily ascertained. As a general proposition this would be correct; but, when applied to the clause of the lease requiring notice to be given, it is not correct. The defendants were not liable simply because the roof was in bad condition and they could have ascertained it readily by the exercise of ordinary care, unless a written notice had been served upon them, or such a state of facts shown as to dispense with the necessity for such notice.

The court also charged the jury, at the request of the plaintiff:

"That the law imposes on the owner of a building of this character the duty of keeping in order the roof, main halls, and stairway."

This, as a general proposition, was also a correct statement of the law, but not when applied to the lease in question, which required notice to be given.

The court further charged that:

"If you find that the Holmes Electric Protective Company were careless or negligent in taking care of the roof, that is the same as if the landlord—that is, these defendants—were negligent."

And also that:

"If the jury find either that the leader pipe was stopped up by the negligence of the Holmes Electric Protective Company, or that the roof was in a state of disrepair, then they can find for the plaintiff; in other words, they do not have to find both things. That either the stoppage of the leader pipe or the defect in the roof will be an act of negligence."

Such instructions were erroneous and could not have failed to mislead the jury as to the real issue to be determined. It is suggested, however, that these errors were corrected by the court's thereafter charging:

"In addition to what I have said, gentlemen, I want to say to you that if you find that the leakage was due to defects in the roof, caused by ordinary wear and tear, or by any other cause than the acts of the Holmes Electric Protective Company, or the acts of the defendants, your verdict must be for the defendants."

I do not think this was sufficient to remove from the minds of the jury what had previously been charged, viz., that if they found the roof was in bad condition, and the same could have been discovered by the defendants exercising ordinary care, then they should find for the plaintiff. As the case was tried, there were really two issues to be determined: (1) Whether there were discoverable defects in the roof before the storm; and (2) whether the use of the roof by the Holmes Company, with the permission of the defendants, caused such defects and made it unnecessary for the plaintiff to serve a written notice before it could hold defendants liable for damage caused by the leakage. The second of these issues seems to have been lost sight of; the case being tried as if the lease had contained no provision for a written notice.

The appellants also contend that error was committed in permitting the testimony of one Martin, plaintiff's former manager, given upon the trial of another action to recover for this same loss, to be read in evidence. The other action was against these same defendants; but the words "individually and as" did not appear after their respective names. Martin died prior to the trial of the present action, and his testimony was therefore admissible under section 830 of the Code of Civil Procedure. The subject-matter of both actions was the same, and the fact that in the present action defendants are sued in both their individual and representative capacities did not render such testimony inadmissible. The parties are the same. Boyd v. U. S. Mortgage Co., 187 N. Y. 262, 79 N. E. 999, 9 L. R. A. (N. S.) 399, 116 Am. St. Rep. 599; Deering v. Schreyer, 88 App. Div. 457, 85 N. Y. Supp. 275. Portions of his testimony were obviously incompetent and inadmissible, and the defendants' objections thereto should have been sustained. Under section 830 of the Code of Civil Procedure, when the testimony of a deceased witness is read, such testimony, or any part of it, is "subject to any other legal objection to the competency

of the witness or to any other legal objection to his testimony or any question put to him." The fact that no objection was made to such testimony, when offered on the former trial, or that an objection made was overruled and the testimony received, is not binding or controlling on the subsequent trial. To so hold would be to eliminate the words quoted from the section referred to.

The judgment and order appealed from therefore must be reversed, and a new trial ordered, with costs to appellants to abide the event. All concur.