JULIUS FRIEDRICH, Plaintiff, and JULIUS FRIEDRICH Co., INC., Plaintiff-Respondent, *v.* ARTHUR L. MARTIN et al., as Administrators of the Estate of OLIVER COSTICH, Deceased, Appellants, et al., Defendants.

Fourth Department, May 5, 1943.

*Ira H. Morris* and *Charles E. Bostwick* for appellants.

*James E. Cuff* and *J. Eugene Goddard* for respondent.

Dowling, J. This litigation arises out of a contract awarded to the Julius Friedrich Company, Inc., hereinafter referred to as the Friedrich Company, by the State of New York in August, 1930, for the paving of Empire Boulevard, Irondequoit, N. Y. The Friedrich Company began the performance of the contract in September, 1930, and completed the work to the satisfaction of the State in September, 1931, at a claimed profit of $13,140.61. The controversy involves the division of this alleged profit. To appreciate the issue it is necessary to understand the factual background.

Oliver Costich, for many years, was a well-known contractor in the city of Rochester. He was interested in several corporations which were engaged either in the real estate or in the contracting business. One of these concerns was the Roach-Thompson Co., Inc., which company Costich practically

owned and controlled. Julius Friedrich was also a well-known contractor in Rochester. He operated the Julius Friedrich Company, Inc. which he owned and controlled. Costich and Friedrich were warm friends. Prior to 1930, Costich had constructed a sewer system for the town of Irondequoit, which is near Rochester, N. Y. The work of installation was so carelessly done that the town prosecuted Costich both civilly and criminally. He successfully defended the criminal proceedings but not the suit for damages. The litigation cost him altogether seven hundred thousand dollars. One of the streets in which he had laid a sewer was Empire Boulevard. A lady who had been concerned in his prosecution lived on that street. When Costich learned that the State was advertising for bids for the pavement of Empire Boulevard he contacted his friend Friedrich on August 1, 1930, and told Friedrich that he had to have that job on account of the defective sewer he had laid in that street. That if that matter should come up again there would be a lot of publicity. That he dared not figure on it himself and that he must have the job in the hands of someone who would keep the defects covered up. That " I want you to take it in your name." That he had a lot of material left from the Irondequoit job which was paid for. That he would furnish the pipe, the lumber, the machinery and everything, including the money, and put it " against your time." That the Friedrich Company should make the bid and that he and Friedrich would divide the profits arising from the job equally. Friedrich accepted the proposition and the Friedrich Company was awarded the contract. Costich supplied the lumber, the machinery, the materials and substantially all the money for the performance of the contract. Costich operated through the Roach-Thompson Company and Friedrich operated through the Friedrich Company. When the contract was completed Costich, Friedrich and their servants had a conference and reached an agreement that the contract had produced a profit of $13,140.61. This profit was paid over to Costich through the Roach-Thompson Company and upon Costich's agreement to pay Friedrich his one half thereof in two weeks. Costich procured the money on the representation that he was in dire need of money at the moment. At the appointed time Costich refused to pay Friedrich his share. The matter stood in abeyance until 1935 when Friedrich brought action against Costich to recover his share of the profits. Costich defended and Friedrich's complaint was dismissed at the close of his case on the theory that the cause of action belonged to the Friedrich

Company. Whereupon Friedrich instituted this action joining the Friedrich Company as plaintiff so, as he alleged, there can be no doubt as to the proper party to receive payment, and the Roach-Thompson Company as a defendant with Costich. The complaint contains two causes of action, one on the contract made between Friedrich and Costich and the other on the theory of *quantum meruit* for services rendered to the defendants by Friedrich and the Friedrich Company. Costich answered denying liability and the Roach-Thompson Company answered denying liability and interposing a counterclaim for materials furnished and for the hire of machinery. Costich died on October 7, 1936, and his administrators with the will annexed were substituted as defendants.

The action came to trial before a jury in March, 1942. Over the objections of the defendants that the witness was not competent to testify and that his testimony was inadmissible under section 347 of the Civil Practice Act and that the parties were not the same, the plaintiffs were permitted to read the testimony given by Julius Friedrich on the trial of his action against Costich. The court, however, limited the testimony to Friedrich's claim against Costich personally. After that testimony had been read, and before the close of the plaintiffs' case, Friedrich requested that the complaint as to him be dismissed upon the merits. His motion was granted. His counsel also stated that Julius Friedrich waived any claim that he might have against the defendants. The case was continued with the Julius Friedrich Co., Inc. as sole plaintiff. No application to amend the pleadings was made then or later. Friedrich then testified that he had sold his stock in the Friedrich Company to his sister-in-law and housekeeper and had taken from her, her demand note in the amount of $20,000 and that he had resigned his offices and severed his connections with the Friedrich Company and then offered himself as witness in behalf of his former company. The plaintiff and the defendants then stipulated, to save time, that his testimony as read be considered as his testimony in the case subject to the objections and exceptions of the defendants already taken to the reading thereof. At the close of the plaintiff's case the complaint was dismissed as to the Roach-Thompson Co., Inc., but that company remained in the case to prosecute its counterclaim against the plaintiff company. The Roach-Thompson Co., Inc. offered evidence in support of its counterclaim and of the defense generally.

The court submitted two questions to the jury, namely: (1) " Was this contract, as alleged in this complaint, actually made between the Friedrich Company and Oliver Costich individually? " (2) " Should you find that the plaintiff has met the burden placed upon it, and has proven to you that a contract did exist in the manner claimed by it, then you must turn to the second question in the case and determine the amount, if any, to which the plaintiff is entitled by virtue of the breach of the contract." The jury returned a verdict in favor of the plaintiff for $6570.30 with interest from January 1, 1932, and no cause for action on the counterclaim. From the order denying the defendant's motion to set aside the verdict and for a new trial and from the judgment entered on the verdict, the administrators have appealed.

There is not a scintilla of evidence in this record that any contract was made between the Julius Friedrich Co., Inc. and Costich. No such contract was alleged in the complaint. The Friedrich Company never made any such claim against Costich. The evidence is quite clear that Friedrich and Costich treated the Friedrich Company and the Roach-Thompson Company as mere figureheads. Both of them took precautions to hide behind their corporations. As it turned out Costich's fears were groundless as the sewer in Empire Boulevard was substantially all right. That the Friedrich Company and the Roach-Thompson Company were figureheads is evidenced by the fact that the Friedrich Company opened a special account with its bank and a special set of books to handle the transaction and the money to finance the transaction and the material and machinery used on the job were supplied by Costich through the medium of the Roach-Thompson Company. Neither Costich's name nor Friedrich's name appeared in the transaction except that Friedrich signed the contract for his company. Neither corporation shared, nor was supposed to share, in the profits of the enterprise.

The court committed reversible error in allowing Friedrich to testify as to personal transactions between him and Costich. The fact that he transferred his stock in the Julius Friedrich Co., Inc. to his sister-in-law and housekeeper and resigned his offices in that company did not qualify him as a witness. The evidence established that he was still interested in the event. He testified that he told Costich when he asked him for his share of the profits " Oliver, remember I have got to settle with the Friedrich Company; the Friedrich Company is paying me a salary and what I get out of this, my split, has to go toward

paying back the salary I drawed from the Julius Friedrich Company.'' It is fair to assume that, if that company recovered one half of the profits, Friedrich would not be called upon to reimburse it for the salary·he had received from it. And it is likewise fair to assume that the new owner of the Friedrich Company, if the sale of the stock was not a fiction, would press him for payment in the event that the company failed to sustain a recovery. Furthermore Friedrich did not release the Friedrich Company from any claim he had to the profits recovered by it. He did not testify that Costich agreed to pay one half of the profits to the Friedrich Company. He testified '' Q. Mr. Friedrich, your company, the Julius Friedrich Company which did the work on Empire Boulevard, you made that bid in the usual and ordinary way didn't you? A. I took it for granted, I done the work and used our name.''

The action was not brought and the recovery was not had on an account stated. (*Schutz* v. *Morette,* 146 N. Y. 137, 141.) The jury found for the plaintiff on a cause of action not pleaded. No objection was made to the evidence as inadmissible under the pleadings. By failing to so object the appellants would have waived their rights if the evidence had supported the verdict and the verdict was otherwise unobjectionable. (*Northam* v. *Dutchess County Mut. Ins. Co.,* 177 N. Y. 73.) The verdict was contrary to the law and contrary to the evidence.

Friedrich's complaint has been dismissed on the merits on his own motion. All the available evidence appears to be in the record. A new trial would avail nothing. The judgment should be reversed and the complaint dismissed.

Harris, J. (dissenting). The defendants, as administrators with the will annexed of Oliver Costich, deceased, appeal from a judgment obtained and entered in Monroe county on March 30, 1942, such judgment being based on a verdict in favor of the plaintiff against such administrators in the amount of $10,596.79, including interest with costs. The action is one in contract. The other defendant, Roach-Thompson Co., Inc., had a direction at the end of the plaintiff's case in its favor for dismissal of the complaint against the corporate defendant on the merits. When the case went to the jury, there was left for the consideration of the jury a counterclaim of the corporate defendant against the plaintiff corporation, the merits of which counterclaim were to be determined in connection with the suit of the plaintiff against both defendants. During the trial the individual plaintiff, Julius Friedrich, consented to a voluntary nonsuit, on the merits, so far as his complaint was concerned. So, although

the trial started with an individual and a corporate plaintiff and an estate and a corporate defendant, when it got to the jury it resolved itself into the claim of the Friedrich Corporation against the Costich Estate and the counterclaim of Roach-Thompson Co., Inc. against the Friedrich Corporation. As has been indicated, the jury found in favor of the plaintiff corporation, both on its claim against the Costich Estate and on the claim of the Roach-Thompson Co., Inc. against the plaintiff corporation.

The proof on trial may be summarized as follows: That Costich, when alive, both individually and on behalf of Roach-Thompson Co., Inc., in which he (Costich) was heavily interested, solicited the plaintiff Friedrich to secure in the name of the Friedrich Corporation a certain contract with the State of New York for laying a concrete pavement on Empire Boulevard, Monroe county, and to carry out such contract, on behalf of Costich as a concealed principal, the compensation to Friedrich or the Friedrich Corporation to be one half of the profits on the paving job; Costich and Roach-Thompson Co., Inc. to furnish machinery and materials and finance as their share of the bargain. Both defendants denied the making of the contract, and claimed that if it were made it was unenforcible due to the Statute of Frauds and that the contract itself, if made, was against public policy; in addition to this, Roach-Thompson Co., Inc. set up a conterclaim for the costs and materials which it claimed the Friedrich Corporation had used on the job and for which the Roach-Thompson Co., Inc. claimed to be entitled to payment. The defense of the Statute of Frauds fell by the wayside during the trial and the defense of violation of public policy, although urged perfunctorily on the motions for dismissal at the end of proof, is not pursued on this appeal, so far as the arguments and briefs are concerned.

On the trial two diametrically opposite sets of facts were produced by the litigants. Julius Friedrich personally testified to this effect: That he had resided in Rochester for some sixty-three years and was in the contracting business, the same having been his father's business and that he did some business under the name of Julius Friedrich Co., Inc., a corporation; that he owned ninety-eight shares in the stock of the corporation, and that the corporation engaged in public improvement contract work. Oliver Costich (now represented by his administrators) was also a contractor whom he had known for many years. That some time previous to August, 1930, Costich had built some sewers in the vicinity of Empire Boulevard. The method of

the construction of these sewers became a matter of public concern and led to the indictment of Costich, a hung jury on his criminal trial, the bringing of civil litigation against Costich by the public authorities, and his getting out of difficulties by the expenditure of several hundred thousand dollars. Friedrich said that on or about August 1, 1930, he met Costich in front of the Exchange Place Building, Rochester, and Costich said to him in substance: " ' The Empire pavement is coming up. * * * And I got to have that job and I dasn't figure on it myself and I dasn't have my name mentioned. * · * * And I got to have that job on account of the defect these sewers is in. If that should come up again there would be a lot of publicity and I must have that job by someone to keep it covered up. * * * I want you to take it in your name. * * * I have a lot of material left from Irondequoit. * * * I will put that against your time and we will split on the contract what is the profit.' '' Subsequent to that conversation, Friedrich Corporation, in its name, with the assistance of Costich (financially and otherwise) secured the contract. In carrying out the contract the Roach-Thompson Co., Inc. provided the materials. An attorney handled the matter for Costich. The job was completed. In laying the pavement, and there is no doubt but that the pavement was done in a proper fashion, certain relatively minor defects in the sewer were found and were corrected. The moneys were paid by the State with whom the contract for paving the boulevard was made, and from time to time Friedrich Corporation, or Friedrich, on its behalf, or its bookkeeper, paid over to Costich all of the moneys received, so that when the job was completed the State had its work done, Friedrich had on hand some part of the materials, and Costich had the money. So far as the talk which made up the agreement to split profits was concerned, such conversation was or conversations were between Julius Friedrich and Oliver Costich, privately, and so no one, except these two, would have any knowledge whether such talks were had and what were their contents. To substantiate his testimony as to everything except the private conversations with Costich, Friedrich produced as his main witnesses his bookkeeper and that of the Friedrich Corporation, Isabelle Parquet, and Costich's attorney. Both of these witnesses gave testimony bearing out Julius Friedrich's story that the contract was performed for Costich. Opposed to these witnesses, the defendants produced Raymond L. Holcomb, who testified that previous to the Empire Boulevard job he worked for Costich and for Roach-Thompson Co., Inc., but after Sep-

tember, 1930, he worked for Julius Friedrich Corporation on the job in question, and then he returned to the employ of Roach-Thompson Co., Inc. subsequently leaving their employ for other positions. (The jury could find from Friedrich's testimony and that of the attorney that Holcomb was put on the job with Friedrich Corporation by Costich.) He (Holcomb) from time to time got necessary machinery and materials, including that from Roach-Thompson Co., Inc. and that certain material belonging to Roach-Thompson Co., Inc. was still in the hands of Friedrich Corporation when Holcomb left its employ. His testimony, if believed, would substantiate the counterclaim. Arthur L. Martin testified as to the substantial ownership of stock in the Roach-Thompson Co., Inc. by Costich and of Costich's active connection with the Roach-Thompson Co., Inc. He testified as to the finances of the Empire job and the tendency of his testimony was to show that the job was a job of Roach-Thompson Co., Inc. and not of Friedrich Corporation, and he endeavored to dispute some testimony of Miss Parquet. James G. Norton, at the times in question employed by Roach-Thompson Co., Inc. as an engineer, but at the time of the trial employed by the city of Kingston, testified that one Sunday in August, 1930, he went to a yard on Woodstock Road, where he heard some conversation between Costich and Friedrich, and where Friedrich had some conversation with the witness Norton, and at these times the bids were discussed; that Costich wanted the witness to be helpful on the job. Clinton G. Thompson, sworn for the defendants, testified that in Friedrich's cottage at Irondequoit Bay, he (Thompson) had a conversation with Friedrich in August, 1930, at which conversation there were also present Mr. Costich and Mr. Norton. They discussed the Empire paving job and the fact that Roach-Thompson Co., Inc. was very busy with other contracts and that Friedrich said that the Friedrich Corporation would like to get the job if he could be financed, and Mr. Costich said that he would give financial help on the job. If true, this would be contradictory of Friedrich's story that Costich had approached him and made a request that Friedrich take the job. The questions covered by the foregoing testimony were ably, fully and fairly presented to the jury by the trial court, and such questions were resolved in favor of the plaintiff corporation and against the Costich Estate and Roach-Thompson Co., Inc. Although the appellants (only the Costich representatives have appealed) argue that the verdict was against the weight of evidence, the conclusion is reached, after reading the testimony,

that a question of fact as to whether Costich selected Friedrich or Friedrich sought the job was properly submitted to the jury and that the verdict should stand insofar as the weight of evidence contention is concerned.

Now comes a more serious question raised by the appellants: Was Friedrich a competent witness against the Costich Estate? During Costich's lifetime, Friedrich, personally, had brought a suit against Costich, personally, and the Roach-Thompson Co., Inc., on the same set of facts involved in the suit now on review before us. Costich answered such complaint in much the same manner in which he, and later his estate, answer in the current action. The first action went to trial; after the presentation of the plaintiff's case, the trial justice dismissed the complaint on the ground that the plaintiff was not the proper party in interest to sue; the conclusion of the then trial justice being that, if there were a contract made by Costich, it was a contract with the Friedrich Corporation, and not with Friedrich personally. Then was brought the current action. By the time this action was reached for trial, Costich died and his representatives were substituted in his place and stead as defendants. At the later trial, the Trial Justice permitted to be read, on behalf of Friedrich, personally, the testimony of Friedrich on the earlier trial. The defendants had objected to the reading of such testimony on the ground that, due to the death of Costich, Friedrich was not competent as a witness against Costich. Later in the trial, in order to make the testimony of Friedrich admissible against Costich's estate, Friedrich personally consented to a voluntary nonsuit and offered the testimony of Friedrich on behalf of the Friedrich Corporation as against the defendants. At this point Friedrich testified that a day or two prior to his testimony he had conveyed his entire interest in the Friedrich Corporation to his sister-in-law, Mrs. Emma Friedrich, who was also his housekeeper. From this testimony the plaintiff corporation argued, and the trial court decided, that no longer being a stockholder or even a director or officer, in the Friedrich Corporation, Friedrich was qualified to testify as against the Costich Estate. (Civ. Prac. Act, § 347; Greenfield, Testimony Under § 347, Civ. Prac. Act, pp. 129–134; Curtis, New York Law of Evidence §§ 971, 972; *Stall* v. *Catskill Bank,* 18 Wend. 466; *Gilbert* v. *Manchester Iron Mfg. Co.,* 11 Wend. 627; *Albany County Savings Bank* v. *McCarty,* 149 N. Y. 71; *Harrington* v. *Schiller,* 231 N. Y. 278.) To this contention and in reference to this ruling, the appellants argue that the Friedrich Cor-

poration was just a name for the operations of Friedrich personally, and that he, first, and then his sister-in-law, as assignee, was really the corporation, and therefore he could not testify in behalf of the corporation and thus support her interest in the lawsuit. (Civ. Prac. Act, § 347; " Piercing the Veil of Corporate Entity," Wormser, 12 Columbia Law Review, p. 496; *Jenkins* v. *Moyse,* 254 N. Y. 319, 324; *Goss & Co.* v. *Goss,* 147 App. Div. 698, 702, affd. 207 N. Y. 742.) An examination of these authorities and those kindred to them shows substantial argument in favor of discarding the corporate front when such front, if permitted to be used, would create injustice and inequity. This is not the case here, because the use of section 347 of the Civil Practice Act, to exclude Friedrich's testimony on behalf of the corporation, would create an injustice and in this respect, if the corporate aspect were to be disregarded, then we must consider section 348, Civil Practice Act, which, from the following language, " or of any person who is rendered incompetent by the provisions of the last section, * * * may be given or read in evidence at a new trial * * *," would permit the use of Friedrich's testimony, given at the first trial, at the trial now under review. (*Dean* v. *Halliburton,* 241 N. Y. 354, bottom of p. 362; *Hassett* v. *Rathbone,* 204 App. Div. 229; *Pratt, Hurst & Co., Ltd.,* v. *Tailer,* 135 App. Div. 1.) Costich, who was alive at the time of the first trial, put the individual plaintiff under cross-examination and then, instead of proceeding to a further trial, on the merits, moved for a nonsuit, which he obtained. Here, if we disregard the corporate entity, we have the same parties and the same subject-matter on the second trial. However, this is not a case in equity and there is no reason to set aside the corporate form and no justice in so doing. In reference to· this question of evidence, the court below ruled correctly that there was no interest of Friedrich, or of his assignee, his sister-in-law, as·such interest is understood under section 347 of the Civil Practice Act. Considering that on the first trial the motion to dismiss as against Julius Friedrich (then the only plaintiff) was made by the then individual defendant, Costich (later deceased, and now represented by his administrators, with the will annexed) on the ground that the Friedrich Corporation was an entity separate from Friedrich as an individual, and that there has never been any appeal from the granting of such motion, the conclusion is reached that the Costich Estate is now precluded from contending that Friedrich and the Friedrich Corporation were one and the same, or that Friedrich personally and not the Friedrich Corporation is the real party in interest.

The jury must have found that the moneys received by Friedrich or the Friedrich Corporation on account of the contract with the State, were paid over to Costich individually, and therefore, the Friedrich Corporation was entitled to the return of such moneys representing the share of profits received by the Friedrich Corporation, either on behalf of itself, or on behalf of Friedrich as an individual, and paid to Costich under an agreement to repay the same.

Appellants argue that the trial court erred in granting the dismissal as to the plaintiff Julius Friedrich, on the merits. There is nothing to this point, especially when there is no appeal by Roach-Thompson Co., Inc.

The appellants also argue that the testimony of Costich's attorney was inadmissible. In this they are wrong. (*Baumann* v. *Steingester*, 213 N. Y. 328, 332, 333; *Matter of Krup*, 173 Misc. 578.)

In reference to the defense of violation of public policy, this question was not pursued either by brief or argument on the appeal. It was based on the defendants' contention that, even though Friedrich was telling the truth and his testimony was admissible, he and Costich had arranged to submit a bid in the name of the Friedrich Corporation so as to conceal from the State that Costich was interested and that this was an endeavor to cover up Costich's transgressions against the public in the sewer building. Testimony shows that the State wanted a pavement laid and secured what it desired on a fair bid. The testimony does not go far enough to show any violation of the public interest. It is important to note that both on this question and on the question of the transfer of stock in the Friedrich Corporation, no one asked to go to the jury on the question of good faith or fraud in either or both transactions.

The judgment and order below should be affirmed, with costs.

All concur with DOWLING, J., except TAYLOR and HARRIS, JJ., who dissent and vote for affirmance in an opinion by HARRIS, J., in which TAYLOR, J., concurs. Present — CROSBY, P. J., TAYLOR, DOWLING, HARRIS and McCURN, JJ.

Judgment and order reversed on the law and facts, with costs, and complaint dismissed, with costs.