RICHARD FIELDS, PLAINTIFF, v. THE MOUNTAINSIDE HOSPITAL, A CORPORATION OF THE STATE OF NEW JERSEY; DEFENDANT.

Decided January 21, 1944.

For the plaintiff, *Edward R. McGlynn.*

For the defendant, *Cox & Walburg* (*Harry E. Walburg,* of counsel).

JOSEPH L. SMITH, C. C. J.   The defendant moves to strike the complaint and its amendments on the ground that the complaint does not allege a good and legal cause of action, for the reason that the defendant is a charitable corporation and that the plaintiff was a beneficiary of the charitable purposes of the said defendant.   The plaintiff admits for the purposes of this motion that the defendant may be described as a "charitable institution."   The original complaint consists of four counts and the amendment to the complaint contains two additional counts.

The first count alleges that from April 19th, 1941, to July 3d, 1941, and for a long period of time prior thereto, The Mountainside Hospital, the defendant, engaged in the business of operating a hospital for profit, at Montclair, New Jersey, at which hospital it undertook to care for the sick and give nursing and medical attention and to provide apparatus and equipment necessary for the care of the sick, for all of which it charged and received compensation.   It further alleges that the defendant owned, operated, maintained and controlled the apparatus and equipment mentioned in the complaint at all times mentioned therein.   The plaintiff, Richard Fields, it is alleged, was admitted to the said hospital on or about April 9th, 1941, for the purpose of receiving medical care and treatment; that on or about said date, the said plaintiff requested that he be placed in a private room in said hospital for treatment, medical and nursing attention commensurate with his needs, and that on the said date he was placed in a private room of said hospital.   It further alleges that the defendant corporation, through its administrators, servants and agents impliedly promised that the plaintiff would be given nursing and medical attention commensurate with his needs and that it would use fit and proper apparatus and equipment, for which the plaintiff promised to pay the regular charges.   It alleges that by reason of the allegations above referred to, there was an implied contract between the plaintiff and the defendant corporation that the plaintiff would be given nursing and medical care and attention commensurate with his needs and that the defendant

would use fit and proper apparatus and equipment and would use care in its maintenance, for which the plaintiff promised to pay the regular charges. It further alleges that the plaintiff remained in the said private room from April 12th, 1941, until July 3d, 1941, and for a period of time thereafter, during which time he received from the defendant certain medical care and attention, and during which time he was charged the usual rates for his private room, nursing and medical attention and for the use of its apparatus and equipment. It alleges further, that on or about July 3d, 1941, the defendant corporation, through its administrators, servants and agents, in violation of the implied contract above referred to, placed the plaintiff in a dangerous situation, to wit: the defendant corporation, through its administrators, servants and agents, placed faulty and improper equipment at the disposal of the plaintiff, and as a result of the plaintiff's using such faulty and improper apparatus and equipment, he was caused to fall and suffer the injuries and damages alleged in said complaint. It alleges certain personal injuries in detail, as well as the aggravation of a pre-existing condition, claiming permanent injuries and certain special damages.

The plaintiff alleges that he performed all of the terms and conditions of the said agreement.

It was agreed by counsel for the purposes of this motion, to inform the court of the nature of the accident, solely for the purpose of assisting the court in disposing of this motion. As the court understands the agreed statement of fact, as aforesaid, it would appear that the plaintiff, on the day of the accident, had been supplied by the defendant with a Balkan frame, which was attached to his bed, and which the plaintiff used in helping to pull himself up in the bed. This is a wooden frame. While the plaintiff was using it, on July 3d, 1941, the wooden frame broke and the plaintiff was injured.

There is no allegation in the complaint, or amendments thereto, setting forth the alleged cause of action was based on the negligence of either the doctors or nurses in the employ of the defendant hospital.

The second count of the complaint is similar to the first count, except that it alleges an express contract between the parties.

It is to be noted, as to the first and second counts, that the breach of the said contract claimed by the plaintiff, was that "the defendant would use fit and proper apparatus and equipment, and would use care in its maintenance."

For the purposes of this motion we may consider the first and second counts together, as they are intended to allege respectively, a breach of contract; on the first, an implied contract, and the second count, an express contract.

It does not seem to this court, under the allegations of the complaint, that a legal cause of action is stated. There can be no liability on contract, such as is alleged here, when there is none in tort. *D'Amato* v. *Orange Memorial Hospital,* 101 *N. J. L.* 61; 127 *Atl. Rep.* 340; *Boeckel* v. *The Orange Memorial Hospital,* 108 *N. J. L.* 453; 158 *Atl. Rep.* 832; *affirmed,* 110 *N. J. L.* 509; 166 *Atl. Rep.* 146; *Kolb* v. *Monmouth Memorial Hospital,* 116 *N. J. L.* 118; 182 *Atl. Rep.* 822; *Bianci* v. *South Park Presbyterian Church,* 123 *N. J. L.* 325; 8 *Atl. Rep.* (2d) 567; *Rossen* v. *Peter Bent Brigham Hospital,* 235 *Mass.* 66; 126 *N. E. Rep.* 392; *Williams* v. *Fenster,* 103 *N. J. L.* 566; 137 *Atl. Rep.* 406; *Hadley* v. *Baxendale,* 26 *Eng. L. & Eq.* 398.

Therefore the motion to strike as to the first and second counts will be granted.

The third count charges negligence in that the defendant owed the plaintiff the duty to use due care in the maintenance management, operation and control of its premises, equipment and apparatus furnished for plaintiff's use by the defendant, so as not to injure the plaintiff, but that, notwithstanding this duty, the defendant, by its agents, servants and employees, negligently and carelessly furnished for the use of the plaintiff, apparatus and equipment which was improper, defective and inadequate, and that plaintiff, in using same, was caused to fall and suffer injuries and damages claimed therein.

As heretofore stated, the plaintiff admits, for the purpose

of this motion, that the defendant may be described as a "charitable institution." It is now the law of this state that a person who is the recipient of the benefactions, or is a beneficiary of a charitable institution, cannot maintain an action against that institution for the negligence of its physicians and nurses, as a result of which a beneficiary sustained personal injury. The courts so holding have based their rulings on the doctrine of public policy. In the case of *D'Amato v. Orange Memorial Hospital, supra,* 101 *N. J. L.* (at *p.* 65) ; 127 *Atl. Rep.* 341, Chancellor Walker, speaking for the Court of Errors and Appeals, said :

"In our opinion, public policy requires that a charitable institution maintaining a hospital be held not liable for injuries resulting to patients through the negligence or carelessness of its physicians and nurses, even if the injured person were a pay patient, payment for board, medical services and nursing in such case going to the general fund to maintain the charity." *Boeckel* v. *The Orange Memorial Hospital, supra; Kolb* v. *Monmouth Memorial Hospital, supra.*

The court feels that the cause of action alleged in the third count clearly comes within this inhibition and motion to strike must be granted, as it does not state a good and legal cause of action; the public policy of our state having been fixed by our Court of Errors and Appeals, no change therein can be made, except either by that court or the legislature. This question possibly may now again be submitted to that court on this adverse ruling, for its consideration. Public policy may have changed since 1924 when *D'Amato* v. *Orange Memorial Hospital, supra,* was decided.

The fourth count, in effect, is one alleging that the defendant maintained a nuisance in that by its agents, servants and employees it constructed and maintained and caused, suffered and permitted to be constructed and maintained, a thing of inherent danger and menace to life, limb and safety of all persons lawfully using such apparatus and equipment, by reason of all of which the conduct of the defendant constituted a nuisance to the public as a whole and to the plaintiff in particular.

I cannot find that the cause of action that the defendant
maintained a nuisance, as alleged in the fourth count, can
be sustained, and for the reasons heretofore stated in respect
to the previous counts, motion to strike must prevail.

The fifth count, in addition to repeating the allegations
contained in paragraphs one, two and three of the first count,
alleges that on or about April 12th, 1941, the defendant
admitted the plaintiff as a private patient in a private room
of said hospital, for treatment, medical and nursing attention
by his own physicians and nurses employed by him for that
purpose. The defendant corporation, through its administra-
tors, servants and agents, in consideration of the charges
made for the use by the plaintiff of the room in said hospital
and for the facilities of said hospital, including equipment
such as bed, apparatus necessary for the plaintiff's treatment,
&c., were under a duty to furnish apparatus and equipment
suitable for the purposes for which they were intended and
were under a duty to select and employ competent and efficient
servants and agents (exclusive of doctors and nurses) whose
duty it was to inspect, repair and maintain such equipment
in such condition that it could be used for the proper treat-
ment of the plaintiff. It alleges that on or about July 3d,
1941, the defendant failed to provide competent and efficient
administrators, servants and agents to properly procure,
inspect and maintain suitable equipment for the treatment
of the plaintiff and by reason of their incompetence and inef-
ficiency, which was known or should have been known to the
defendant, placed faulty and improper equipment at the dis-
posal of the plaintiff, and as a result of the plaintiff using
said faulty apparatus and equipment he was caused to fall
and suffer the injuries and damages claimed.

The fifth count of the complaint, however, this court will
allow to stand. This court does not know of any ruling in
this state where it was decided whether or not a charitable
corporation is liable to a beneficiary if he is injured through
negligence on the part of the charity in failing to exercise
reasonable care in the selection of its servants or agents.
This question has been decided both ways in other jurisdic-

tions, some holding charitable institutions liable, others holding to the contrary. This fifth count is based on negligence in failing to use due care in furnishing apparatus and equipment suitable for the purposes for which they were intended, and in failing to select and employ competent and efficient servants and agents (exclusive of doctors and nurses) whose duty it was to inspect, repair and maintain such equipment.

Chancellor Walker in *D'Amato v. Orange Memorial Hospital, supra* (at *p.* 65), said:

"Like the Masaschusetts court in the earlier case of *McDonald* v. *Massachusetts General Hospital* (120 *Mass.* 432), we are not required in this decision to go so far as to hold that a charitable corporation maintaining a hospital might not be liable to a patient if carelessness were shown in the selection of the agent responsible for the injury, as that question is not raised in this case."

It is clear that the court, in that case, did not pass on the question whether or not a hospital or charitable institution may not be liable to a patient if carelessness were shown in the selection of the agent responsible for the injury. *Bianchi v. South Park Presbyterian Church, supra.*

This said fifth count, however, is also based on the theory which some of the cases have called "administrative negligence." The basis for this rule is that a hospital may be liable for failure to furnish proper equipment, as a result of which a patient is injured and such wrong doing is referred to as "administrative negligence." It is administrative and it is a non-delegable duty on the part of the hospital, to employ a capable staff and for the breach of this duty, the institution may be liable. It is an administrative duty on the part of the hospital to supply proper equipment for the care of the patient.

In the case of *Miller* v. *Sisters of St. Francis* (1940), 5 *Wash.* (2d) 204; 105 *Pac. Rep.* (2d) 32; the court, in holding the hospital liable, said (at *p.* 35):

"A hospital, even though it be a charitable institution, such as the one involved in this case, is liable for failure to furnish proper equipment if damages result from that failure.

This is what is called administrative negligence, as distinct from failure to exercise due care in the selecting of proper physicians and nurses.

"* * * A further distinction has been made to depend upon whether the tort grew out of a want of due performance, or ministerial or administrative duties, or whether it arose from the malpractice of the physicians, nurses and others in ministering professionally to the patient. In the latter cases, provided the corporation has exercised due care in its non-delegable duty of selecting proper physicians and nurses and providing suitable appliances for them, to which reference is made hereafter, the corporation will not be liable for injury to the patient owing to the negligent performance of these professional duties. On the other hand, if the injury springs from the corporation's failure in the performance of a ministerial or administrative duty, the corporation is liable, even though the failure was due to the act of a nurse or similar professional attendant in attempting to perform the duty for the corporation * * *." 5 *Fletcher Cyc. Corporations* 5352, § 3362. *Heckman* v. *Sisters of Charity* (1940), 5 *Wash.* (2d) 699; 106 *Pac. Rep.* (2d) 593.

In the case of *Volk* v. *City of New York* (1940), 284 *N. Y.* 279; 30 *N. E. Rep.* (2d) 596, the court (at *p.* 597), said:

"Nevertheless, if a hospital be negligent in the performance of an administrative function, it is liable in damages * * *: It is not the plaintiff's contention that the hospital is responsible for the acts of its nurses, but that the hospital was negligent in an administrative capacity in making available decomposed medical supplies * * *."

In the case of *Hillyer* v. *St. Bartholomew* (1909), 2 *K. B.* 820, the court said:

"In my view, the duty which the law imposes in the relation of hospital to patient, and the corresponding liability, are limited. The governors of a public hospital, by their admission of the patient to enjoy in the hospital, the gratuitous benefits of its care, do, I think, undertake that the patient while there, shall be treated only by experts—and further, that those experts shall have at their disposal for

the care and treatment of the patients, fit and proper apparatus and appliances."

In New York, in the recent case of *Rabasco* v. *New Rochelle Hospital Association,* 266 *App. Div.* 97; 44 *N. Y. S.* (2d) 293, the court said:

"The character of the act done, and not the person doing it, determines whether the function is administrative or non-administrative * * * and that where such a question is presented, the dismissal of the complaint against the defendant hospital, as a matter of law, was error." *Bickford* v. *Peck Memorial Hospital,* 266 *App. Div.* 875; 43 *N. Y. S.* (2d) 20; *Dillon* v. *Rockaway Beach Hospital,* 284 *N. Y.* 176; 30 *N. E. Rep.* (2d) 373.

In the sixth count the plaintiff alleges that the defendant holds itself out as a charitable institution, and by reason thereof claims exemption from liability for injuries resulting to patients in said hospital, occurring by reason of the negligence or carelessness of its physicians and nurses, and that in order to protect itself against liability and to protect its trust funds, it insured itself against liability for injuries or claims for damages to patients or other persons, by reason of the negligence of its nurses or physicians, or its servants or agents, as well as for claims for damages to persons through the use of improper or inadequate or unsuitable equipment.

The plaintiff further alleges that such contract of insurance was made for the benefit of persons having claims against the defendant, including the plaintiff, and the plaintiff alleges that he is entitled to recover a judgment against the defendant corporation, even though it is a charitable institution to the extent of and not exceeding the amount of the contract of insurance obtained by the defendant, as herein alleged.

This count will be stricken out. The alleged insurance carrier is not a party to this action. It is an indemnity agreement. We have no statutory provision in this state whereby a plaintiff can obtain a judgment against a charitable institution subject to be paid only in the event that the insurance carrier is held liable: 3 *Scott on Trusts, Topic 6,*

*p.* 2153, § 402; *Cyclopedia of Insurance Law,* 5 *Couch,* § 1165, *C. P.* 4147; *Enman* v. *Trustees of Boston University,* 270 *Mass.* 299; 170 *N. E. Rep.* 43; *Williams* v. *Church Home,* 223 *Ky.* 355; 3 *S. W. Rep.* (2d) 753.

Circuit Court Judge William A. Smith, in passing upon this question, in the unreported case of *Helen Golis, an infant, &c.,* v. *St. Stanislaus Roman Catholic Church of Newark, New Jersey,* said:

"The ground upon which this protection from liability is predicated is that it is against the public policy of this state. It is urged by the plaintiff that the rule of public policy should not apply where the trust is not going to suffer by reason of any recovery had in any action such as this is.

"My consideration of the authorities with regard to the rule of public policy does not indicate that the rule should be so limited. Any change in the rule of public policy as decided by the upper courts is for them or the legislature."

An order may be submitted without costs.